IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AUSTIN MOORE, Individually, and TIFFANY MOORE, Individually, <br><br> Plaintiffs, <br><br> v. <br><br> ELECTRONIC MARKETING, LLC, and SAMSUNG SDI CO., LTD, a Foreign Company, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. CIV-21-836-D |

**ORDER**

Before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 51] filed by Defendant Samsung SDI Co., Ltd ("Samsung"). Plaintiffs Austin and Tiffany Moore responded in opposition [Doc. No. 62], and Samsung replied [Doc. No. 63]. The matter is fully briefed and at issue.

**BACKGROUND**

Plaintiffs initiated this action after an e-cigarette's 18650 lithium-ion battery allegedly exploded in Plaintiff Austin Moore's pocket, causing him to suffer burns to his right hand and leg. He purchased the e-cigarette from Amazon and alleges that Samsung manufactured the device's lithium-ion battery. Samsung is a South Korean corporation with its principal place of business and headquarters in South Korea.

Samsung seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. It claims that, because it has not "marketed, sold, shipped, or distributed" 18650 lithium-ion batteries to customers in Oklahoma, "there is no basis for exercising specific jurisdiction" over it in this case. Def.'s Mot. to Dismiss at 1, 20. Plaintiffs counter that, "[r]egardless of whether Samsung itself sold products in Oklahoma, it knew or should have known that its batteries would be incorporated into products sold in Oklahoma—making it subject to jurisdiction here if or when its batteries failed." Pls.' Resp. at 14.

## STANDARD OF DECISION

A plaintiff bears the burden to establish personal jurisdiction over each defendant named in the action. *Rockwood Select Asset Fund XI (6)–1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179-80 (10th Cir. 2014). This burden is light in the preliminary stages of litigation. *AST Sports Science, Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). When there has been no evidentiary hearing, a plaintiff must only present competent proof in the form of affidavits and other written materials that, if true, would establish a prima facie showing that jurisdiction is proper. *Id.* at 1057. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

## DISCUSSION

### I. Specific Jurisdiction

To establish personal jurisdiction over a nonresident defendant, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Employers Mut. Cas. Co. v. Bartile Roofs*, 618 F.3d 1153, 1159 (10th Cir. 2010) (internal quotation omitted). Under Oklahoma law, the personal jurisdiction inquiry is simply a due process analysis. *See Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). The familiar due process standard requires "minimum contacts" between the defendant and the forum state, and a finding that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Burger King Corp.*, 471 U.S. at 476.

Minimum contacts may be established under doctrines of general jurisdiction or specific jurisdiction. *See OMI Holdings, Inc.*, 149 F.3d at 1090-91. Because Plaintiffs do not argue that Samsung is subject to general jurisdiction in Oklahoma, the Court limits its analysis to the issue of specific jurisdiction.

The specific jurisdiction analysis is two-fold. First, the Court must determine whether a defendant has sufficient minimum contacts with the forum state such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v.* Woodson, 444 U.S. 286, 297 (1980). Within this inquiry, the Court must determine whether the "defendant has purposefully directed [its] activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th

3

Cir. 1996) (internal quotation omitted). If the defendant's actions create sufficient minimum contacts, the Court must next consider whether exercising personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987) (internal quotations omitted).

### a. Stream of Commerce Framework

Plaintiffs allege that Samsung sells lithium-ion batteries to companies which then incorporate those batteries into consumer products. They maintain that, because those consumer products are available for sale nationwide—including in Oklahoma—Samsung "has purposefully availed itself of the privilege of conducting activities in Oklahoma—regardless of whether it made direct sales in Oklahoma or marketed its batteries" in Oklahoma. Pls.' Resp. at 10.

This argument implicates the "stream of commerce" theory of personal jurisdiction. The Supreme Court first addressed this theory in *World-Wide Volkswagen*, stating that a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." 444 U.S. at 297-98. It later addressed "whether the mere awareness on the part of a foreign defendant that the components it manufactured, sold, and delivered outside the United States would reach the forum State in the stream of commerce constitutes minimum contacts between the defendant and the forum State such that the exercise of jurisdiction does not offend

traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co.*, 480 U.S. at 105.

Justice O'Connor, writing for the plurality of the Court, concluded that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 112. Rather, some "additional conduct" indicating the defendant's "intent or purpose to serve the market in the forum State" is necessary before personal jurisdiction may be exercised. *Id.* Such additional conduct may include "designing the product for the [forum State's] market. . . . advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* Although the plurality did not conclusively limit "additional conduct" to the foregoing examples, it excluded a defendant's mere awareness "that the stream of commerce may or will sweep the product into the forum State." *Id.* Such knowledge simply "does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.*

Justice Brennan—joined by three other justices—filed an opinion concurring in the judgment but disagreeing with Justice O'Connor's stream of commerce analysis. He concluded that it was not necessary for plaintiffs to show "additional conduct directed toward the forum before finding the exercise of jurisdiction over the defendant to be consistent with the Due Process Clause." *Id.* at 117. He reasoned that "[a]s long as a participant in this process is aware that the final product is being marketed in the forum

State, the possibility of a lawsuit there cannot come as a surprise." *Id.* Thus, under the concurring opinion, "jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause," without any requirement of "a showing of additional conduct." *Id.*

The Court revisited the stream of commerce theory in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011). *Nicastro* involved a products liability suit where the manufacturer of a metal-shearing machine contested personal jurisdiction. It argued that it lacked minimum contacts because (1) it did not sell its machines to buyers in the United States beyond its American distributor; (2) its employees never attended any scrap metal conventions in the forum state; and (3) no more than four of its machines ultimately reached the forum state. *Id.* at 878.

Again, the Court remained splintered. Writing for a four-justice plurality, Justice Kennedy acknowledged that, in the stream of commerce context, "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum state." *Id* at 882. The plurality also noted that, although the defendant may have had "an intent to serve the U.S. market," it had not "purposefully availed itself of the [forum state's] market." *Id.* at 884. Thus, "a defendant [could] in principle be subject to the jurisdiction of the courts of the United States but not of any particular state." *Id.* at 884.

Two justices, led by Justice Breyer, concurred in the result, finding that "[n]one of our precedents find that a single isolated sale . . . is sufficient" to establish the required minimum contacts. *Id.* at 888 (concurring opinion). Notably, the concurrence disagreed with the approach articulated by Justice Brennan in *Asahi*, explaining that "[i]t would ordinarily rest jurisdiction instead upon no more than the occurrence of a product-based accident in the forum State," a concept that is at odds with the Court's precedent. *See World-Wide Volkswagen*, 444 U.S. at 296 (rejecting the notion that a defendant's amenability to suit "travel[s] with the chattel").

Although the Tenth Circuit has not definitively determined the proper framework for a stream of commerce analysis, it has recognized that, under *Nicastro*, "six Justices emphasized that personal jurisdiction did not exist simply because of a defendant's awareness that its products could, through stream of commerce, end up in the forum State." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 843 (10th Cir. 2020). It also noted that the Tenth Circuit "has followed the Supreme Court in requiring a particular focus by the defendant on the forum State to satisfy the purposeful [availment] requirement." *Id.*

In addition, numerous "district courts in this circuit have held that 'something more than merely placing a product into the stream of commerce is required to establish minimum contacts for jurisdictional purposes.'" *Cagle v. Rexon Indus. Corp., Ltd.*, No. CIV-18-1209-R, 2019 WL 1960360, at *8 (W.D. Okla. May 2, 2019) (quoting *Fischer v. BMW of N. Am., LLC*, 376 F.Supp.3d 1178, 1184 (D. Colo. 2019)); *see also Lynch v. Olympus Am., Inc.*, No. CIV-18-512-NYW, 2018 WL 5619327, at *4 n.5 (D. Colo. Oct.

30, 2018) (failing to "find a single court in the Tenth Circuit that applied the most permissive [stream of commerce] test, which only requires a defendant to put the offending product into the stream of commerce without any action specifically directed at the forum itself"); *FITn40, LLC v. Glanbia Nutritionals (Ireland) Ltd.*, No. CIV-20-871-JNP, 2022 WL 79910, at *7 (D. Utah Jan. 7, 2022) ("Simply placing a product, which a third-party retailer fortuitously elects to sell in [the forum state], into the stream of commerce does not rise to the level of purposeful availment."); *Lacebark, Inc. v. Sakata Seed Am., Inc.*, No. CIV-12-746-D, 2013 WL 12086778, at *3 (W.D. Okla. Jan. 16, 2013) ("The Tenth Circuit has not held that simply placing a product into a stream of commerce that ends in a forum state is sufficient, by itself, to permit suit within the state."); *Ortiz v. Alfa Laval India Pvt. Ltd.*, No. CIV-20-869-J, 2020 WL 6531946, at *4 (W.D. Okla. Mar. 20, 2020) ("It appears that Justice O'Connor's opinion carries weight in the Tenth Circuit.").

    **i. Purposeful Availment**

Turning to the present set of facts, Samsung asserts that it "has never marketed, sold, shipped, or distributed 18650 lithium-ion batteries to Oklahoma." Def's. Mot. to Dismiss at 1. It claims that it is a "business to business company," as it "does not sell 18650 [lithium-ion batteries] to individual consumers anywhere in the world." *Id.* at 4. Rather, it sells these batteries "in bulk to sophisticated purchasers involved in the manufacture of battery packs" because these batteries are not "designed or intended to be handled by consumers in any capacity." *Id.*

Further, Samsung states that it has no employees, agents, or representatives located in Oklahoma, and it is not registered to conduct business in Oklahoma. It has no bank account, mailing address, or telephone number in Oklahoma and does not own or control any property in the state. It does not have an officer or place of business in Oklahoma, nor does it pay Oklahoma taxes. Accordingly, Samsung argues that "[n]o stream-of-commerce or other purposeful availment test can allow the exercise of personal jurisdiction over a defendant like SDI Co. who played no intentional role in the path its product took to the forum State." *Id.* at 19.

Plaintiffs do not dispute that Samsung only sells these batteries to businesses. Yet they maintain that Samsung "has made deliberate, purposeful, and considerable efforts to increase its share of the lithium-ion market throughout the United States (and, of course, in Oklahoma) by selling its batteries (singularly and in packs) to companies for incorporation into consumer products." Pls.' Resp. at 10. Thus, Plaintiffs argue, Samsung has "purposefully availed itself of the privilege of conducting activities in Oklahoma— regardless of whether it made direct sales in Oklahoma or marketed its batteries (singularly or in packs) in Oklahoma." *Id.*

To support their argument, Plaintiffs primarily focus on Samsung's activities throughout the United States. For instance, Plaintiffs point out that Samsung participated in auto shows located in Detroit, Michigan from 2015 to 2018. They also note that Samsung currently operates a battery assembly plant in Michigan and intends to build another battery plant in Indiana. In addition, Plaintiffs suggest that Samsung maintains "sales and

marketing arms" in "Los Angeles, Chicago, Austin, and Houston." *Id.* at 6. Further, they allege that Samsung's batteries are "used in a variety of consumer products marketed and sold in the United States . . . which may be purchased through a variety of U.S.-based retailers," including Dell and Harley-Davidson, which each have a presence in Oklahoma. *Id.* at 6-7.

Plaintiffs also contend that because Samsung is a "global" company and "its business is everywhere," it is subject to suit in Oklahoma based on the Supreme Court's recent decision in *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017 (2021). Finally, Plaintiffs argue that Samsung is a "unified brand" responsible for selling a variety of consumer goods, including phones, tablets, and home appliances throughout Oklahoma. Pls.' Resp. at 14. Thus, they argue, Samsung has purposefully availed itself of Oklahoma's market because it "deliberately uses its shared brand identity with other companies that very clearly target and serve the Oklahoma market." *Id.* at 15.

The Court first addresses Samsung's alleged activities in Michigan, Indiana, California, Illinois, and Texas. Although Plaintiffs dispute that "a showing of additional conduct"—as discussed by Justice O'Connor in *Asahi*—is required to satisfy minimum contacts, they nonetheless argue that Samsung "engaged in more than placing the product in the stream of commerce in several ways—for example, by actively seeking to increase its American market share." *Id.* at 13. However, the "additional conduct" that Plaintiffs point to does not establish that Samsung has purposeful contacts with Oklahoma. *See Nicastro*, 564 U.S. at 886 (plurality opinion) ("[I]t is petitioner's purposeful contacts with

[the forum state], not with the United States, that alone are relevant" to the jurisdictional analysis.); *see also id.* at 891 (Breyer, J., concurring) (rejecting the view that jurisdiction may be established based solely on the existence of a nationwide distribution system). As these alleged activities occurred in other jurisdictions, they do not demonstrate that Samsung purposefully availed itself of Oklahoma's market. *See XMission, L.C.*, 955 F.3d at 843 (The Tenth Circuit "has followed the Supreme Court in requiring a particular focus by defendant on the forum State to satisfy the purposeful [availment] requirement.").

Next, the Court turns to Plaintiffs' second argument. Alleging that Samsung's batteries are incorporated into consumer products that are available for sale in Oklahoma through Dell and Harley-Davidson, Plaintiffs claim that, "[r]egardless of whether Samsung itself sold products in Oklahoma, it knew or should have known that its batteries would be incorporated into products sold in Oklahoma—making it subject to jurisdiction here if or when its batteries failed." Pls.' Resp. at 14. In short, Plaintiffs' theory is that Samsung purposefully availed itself of the Oklahoma market vis-à-vis its relationships with Dell and Harley-Davidson, which each have a physical presence in the state.

Plaintiffs' tenuous theory is unconvincing, as "specific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else." *Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004) (citing *OMI Holdings*, 149 F.3d at 1092). Under Plaintiffs' theory, Samsung has met the purposeful availment requirement in each jurisdiction that houses

11

one of the more than 1,400 Harley-Davidson dealerships.[1] But this is not the law; the purposeful availment requirement ensures that jurisdiction will not attach "solely as a result of random, fortuitous, or attenuated contacts" but rather "where the contacts proximately result from actions by the defendant [itself] that create a substantial connection with the forum State." *Burger King*, 471 U.S. at 475 (internal quotations and citations omitted); *see also Daniels v. Exal Corp.*, No. CIV-16-1085-HE, 2017 WL 696130, at *3 (W.D. Okla. Jan. 5, 2017) (A defendant's "ability to foresee that [a distributor] would purchase [its] product and then use it in a finished product that would reach the state of Oklahoma is not enough to establish personal jurisdiction.").

The Court next considers Plaintiffs' argument that *Ford Motor Co.* requires a finding that Samsung has purposefully availed itself of the Oklahoma market. Plaintiffs assert that Samsung "deliberately sought to increase its market share in the United States," and that "[s]imply because Samsung designed, manufactured, or sold these batteries elsewhere is of no consequence—in the face of their global reach—as the *Ford* case indicates." Pls.' Resp. at 11.

*Ford Motor Co.* centered on two separate accidents involving Ford vehicles in Montana and Minnesota. After suits were brought against Ford in those states, Ford moved to dismiss for lack of personal jurisdiction on nearly identical grounds: it argued that the respective state courts "had jurisdiction only if the company's conduct in the State had

---

[1] *Locations*, Harley-Davidson, https://www.harley-davidson.com/us/en/about-us/careers/locations.html (last visited Nov. 21, 2022).

given rise to the plaintiff's claims." *Ford Motor Co.*, 141 S. Ct. at 1023. Ford's argument, labeled as a "causation-only approach," was that specific jurisdiction could only be located "in the State where Ford sold the car in question, or else the States where Ford designed and manufactured the vehicle." *Id.* at 1026. Thus, because the cars at issue were sold outside of the forum states, Ford claimed that "the courts of those States could not decide the suits." *Id.* at 1023.

The Court's analysis centered on whether the claims "relate[d] to the defendants contacts with the forum"—whether Ford purposefully availed itself of either forum state's market was not an issue squarely presented to the Court. *Id.* at 1026. Nonetheless, the Court did dedicate a portion of its discussion to Ford's activities within the forum states. However, this discussion does not support Plaintiffs' argument—it undermines it.

Ford—unlike Samsung here—did not contest "that it actively [sought] to serve the market for automobiles and related products" in Montana and Minnesota. *Id.* at 1026. In other words, it conceded that it "purposefully availed itself of the privilege of conducting activities in both places." *Id.* at 1026 (internal quotation and alteration omitted). Indeed, there was "[s]mall wonder" why Ford "conceded purposeful availment of the two States' markets . . . [b]y every means imaginable—among them, billboards, TV and radio spots, print ads, direct mail—Ford urge[d] Montanans and Minnesotans to buy its vehicles." *Id.* at 1028. These vehicles were "available for sale, whether new or used, throughout the States, at 36 dealerships in Montana and 84 in Minnesota." *Id.* Sales aside, Ford "foster[ed]

13

ongoing connections to its cars' owners" and "distribute[d] replacement parts" in the two forum states, while its dealers "regularly maintain[ed] and repair[ed] Ford cars." *Id.*

Here, Plaintiffs do not allege that Samsung directly markets, sells, or distributes 18650 lithium-ion batteries in Oklahoma. In fact, Plaintiffs do not identify any Oklahoma-based activities undertaken by Samsung, from advertisements to distributions to repairs. The present set of facts stand in stark contrast to those in *Ford Motor Co.*, where there was little question that Ford purposefully availed itself of the respective forum states' markets. Accordingly, the Court is unpersuaded by Plaintiffs' claim that *Ford Motor Co.* compels a finding that Samsung has purposefully availed itself of the Oklahoma market.

Finally, the Court addresses Plaintiffs' claim that "Samsung is a global brand that uses a consistent logo worldwide" and that this "unified brand . . . is well-known for a variety of consumer goods, which are available and sold in Oklahoma." Pls.' Resp. at 14. This in mind, Plaintiffs maintain that Samsung purposefully availed itself of Oklahoma's market even if it "was not the ultimate manufacturer or marketer of such goods [because] it deliberately used the same branding, which seeks to portray the modern image of the leading company." *Id.*

Even assuming that Samsung's parent corporation[2] is subject to personal jurisdiction in Oklahoma due to its efforts to market and sell phones, tablets, and home appliances, "jurisdiction over a parent corporation [does not] automatically establish

---

[2] To be sure, the parties' briefs do not conclusively establish that Samsung SDI Co., Ltd. is organized under a parent corporation, and the Court makes no such determination here.

jurisdiction over a wholly owned subsidiary." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) (recognizing that the defendant's foreign subsidiaries were not subject to personal jurisdiction in the forum state despite their parent corporation being subject to personal jurisdiction in the state); *accord Good v. Fuji Fire & Marine, Ins. Co., Ltd.*, 271 F. App'x. 756, 759 (10th Cir. 2008) ("For purposes of personal jurisdiction, 'a holding or parent company has a separate corporate existence and is treated separately from the subsidiary.'") (quoting *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974)).

As there are no factual allegations indicating that Samsung "has purposefully directed [its] activities at residents of the forum" the Court is unable to conclude that it has specific jurisdiction over Samsung. *Kuenzle*, 102 F.3d at 455 (internal quotation omitted). Accordingly, the Court will not address the issue of whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 n.1 (10th Cir. 1999) ("Because we conclude that [the plaintiff] has failed to establish that [the defendant] has minimum contacts with the [forum state], we need not proceed to the next step of the due process analysis—i.e., whether the exercise of personal jurisdiction over [the defendant] could offend 'traditional notions of fair play and substantial justice.'") (quoting *Asahi Metal Indus. Co.*, 480 U.S. at 113).

## II. Jurisdictional Discovery

In lieu of dismissal, Plaintiffs alternatively request permission to engage in jurisdictional discovery, claiming they "have not yet had a chance to develop the record." Pls.' Resp. at 21. "District courts are endowed with broad discretion over discovery, including whether to grant discovery requests with respect to jurisdictional issues." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1233 (10th Cir. 2020) (citing *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975)). Under Tenth Circuit precedent, "a refusal to grant jurisdictional discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant and that prejudice is present where pertinent facts bearing on the question of jurisdiction are controverted." *Breakthrough Mgmt. Grp, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189-90 (10th Cir. 2010) (internal alterations and quotations omitted). As Plaintiffs seek discovery, they bear the burden of demonstrating an entitlement to jurisdictional discovery and the resulting prejudice from its denial. *See id.* at 1189 n.11; *Dutcher v. Matheson*, 840 F.3d 1183, 1195 (10th Cir. 2016).

Plaintiffs' primary assertion in support of jurisdictional discovery is that such discovery is necessary to "explore Samsung's distribution to its so-called 'sophisticated companies'—particularly those to whom Samsung shipped in bulk without a battery pack such that it can determine if the distribution was, in fact, unauthorized." Pls.' Resp. at 22. In short, Plaintiffs contend that if the "sophisticated companies" to which Samsung ships its batteries are located in Oklahoma, it is likely subject to personal jurisdiction in the state.

Samsung notes that its interaction with the battery "ends at the point of sale from [it] to the particular sophisticated, qualified customer." Def.'s Decl. [Doc. No. 52] at 5. It contends that, after the battery is sold, it "does not have the right or ability to control the customer's subsequent use or sale of assembled battery packs." *Id.*

As noted, the Tenth Circuit recently remarked that "six Justices emphasized that personal jurisdiction [does] not exist simply because of a defendant's awareness that its product could, through stream of commerce, end up in the forum state." *XMission, L.C.*, 955 F.3d at 843. Rather, there must be a "particular focus by the defendant on the forum State to satisfy the purposeful [availment] requirement." *Id.* As detailed above, Plaintiffs have failed to identify any "additional conduct" that Samsung has directed toward the forum state. *See Asahi Metal Indus. Co.*, 480 U.S. at 112 ("[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State."). Thus, even assuming that, after engaging in jurisdictional discovery, it is determined that these "sophisticated companies" are located in Oklahoma, there does not appear to be any additional conduct directed at the state sufficient to exercise personal jurisdiction over Samsung.

Many of Plaintiffs' remaining arguments supporting its request mirror its arguments surrounding whether Samsung purposefully availed itself of the Oklahoma market. *See generally* Pls.' Resp. at 22-23 (Seeking "documents demonstrating that Samsung sought to increase its share of the lithium-ion battery market in the United States, . . . documents

17

demonstrating that Samsung knew that products containing its [batteries] were available for purchase by consumers at various retailers throughout the United States and that those retailers have a presence in Oklahoma, . . . [and] documents demonstrating Samsung benefit[s] from a uniform brand across its companies."). As discussed, these activities are not bases upon which personal jurisdiction may rest. Accordingly, Plaintiffs have failed to demonstrate that jurisdictional discovery is appropriate, and the Court must deny their request.

## CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 51] is **GRANTED.** Accordingly, Plaintiffs' claims against Defendant Samsung SDI Co., Ltd. are **DISMISSED**, as the Court lacks personal jurisdiction over Samsung.

**IT IS SO ORDERED** this 27th day of December, 2022.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge